## SEARS, ROEBUCK & CO.
### vs.
## WILLIAM A. BREE, ET AL.

Superior Court      New Haven County      File #47952

Present:   Hon. ERNEST A. INGLIS, Judge.

Campner, Pouzzner & Hadden,   Attorneys for the Plaintiff.

W. J. Carrig,                      Attorney for the Defendants.

See, also, Page 81 of this volume.

### MEMORANDUM FILED APRIL 14, 1936.

INGLIS, J.   In this action the plaintiff seeks to recover reimbursement for workmen's compensation paid by it to the dependents of one Burtus D. Shepherdson.   Mr. Shepherdson was killed on July 20, 1933, as a result of injuries which he received on that day and which occurred out of and in

the course of his employment by the plaintiff.

Nothing apparently was done about procuring workmen's compensation for his widow and two minor children until January, 1934. At that time Mr. Carrig was retained as attorney for these dependents, and made claim for compensation. On March 13th, 1934, the Compensation Commissioner made an award of compensation and as soon as the plaintiff had notice of the award it started paying the compensation. It has continued to do so down to the present time except that on May 5, 1934, Mrs. Shepherdson remarried and as of that date and from then on the compensation has been paid to the two minor children as sole dependents.

On February 3, 1934, in a letter to the plaintiff's attorneys concerning the workmen's compensation claim Mr. Carrig announced that he had had one of his office associates appointed administrator of the Shepherdson estate and intended to institute suit against F. R. Lamb, who happened to be also in the plaintiff's employ, for the wrongful death of Shepherdson. He stated in the letter that "under our law—your company is entitled by way of subrogation to any amount that you might pay under our Compensation Act." In that connection he asked the plaintiff if it would pay him a contingent fee on the amount which he recovered for it. In reply to this last question the plaintiff's attorneys wrote on February 6, 1934, that they were not in a position to give a definite answer until they had taken it up with the plaintiff.

The matter of Mr. Carrig's fees does not seem to have again come up for any mention in the correspondence which ensued between him and the plaintiff until April 2, 1934. In the meantime there were several letters interchanged, mostly relating to the matter of workmen's compensation.

On April 2nd Mr. Carrig wrote a letter to the Boston office of the plaintiff, another letter to the attorneys of the plaintiff in Chicago and still a third letter to the New Haven office of the plaintiff. In none of those letters did he say anything about his acting as attorney for the plaintiff nor anything in connection with the proposed suit against Lamb, except that in the letter to the attorneys he asked: "Suppose I obtain a verdict, what will your client contribute towards the cost?" In all of the letters he announced that he would presently start suit on behalf of the Shepherdson estate against Lamb.

In the letter to Boston he explained that "if I obtain a verdict your company will be reimbursed" for compensation it has expended and suggested that payment of compensation cease. In the letter to the attorneys he discusses the merits of the claim.

In the letter to the plaintiff addressed to New Haven, Mr. Carrig explains that Sears, Roebuck & Co. are subrogated for all compensation they have paid and "they have a first lien upon any judgment that I might secure against Mr. Lamb". He goes on to say:

"This letter is merely to notify you that I am bringing this action and to apprise you of the proceedings, and I want to assure you that if I make a recovery that I will see that your company gets what belongs to it and need not go to the formality of entering this action as an additional party plaintiff."

Mr. Carrig as attorney for Mr. Bree, Administrator, did start the action against Lamb. It was returnable to this court on the first Tuesday of June, 1934. On June 18, 1934, Mr. Carrig gave written notice by mail to the plaintiff that the action was pending and the plaintiff refrained from entering the action as a party plaintiff within the thirty days allowed by the statute.

On July 21, Mr. Carrig wrote the plaintiff's attorneys asking if the plaintiff would pay him if he succeeded in the matter. To that, on July 24th, those attorneys replied that they did not know whether the plaintiff would engage him to represent its interest and asked him upon which basis he would handle it. Mr. Carrig replied that he would be willing to handle the plaintiff's interests on a contingent basis of 33 1/3 per cent. The only reply that was ever made to that was the letter of August 9th stating that Mr. Kahn of the plaintiff's firm of attorneys was out of town and would take the matter upon his return.

On October 10th a verdict was rendered for the plaintiff in the action of Bree, Admr. vs. Lamb in the sum of $8500.00. On October 23rd, Mr. Carrig wrote the plaintiff at Boston stating that overtures for a settlement had been made and asking the plaintiff to indicate who would have authority to act for it in agreeing upon such a settlement. This letter apparently was referred to the Chicago attorneys and they wrote

to Mr. Carrig indicating that he should submit the terms of any proposed settlement to them. They also stated that they could see no reason why the plaintiff should pay Mr. Carrig one-third of the total amount of the compensation award and suggested that it pay him one-third of the amount of compensation already paid.

Upon receipt of that letter on November 5th, Mr. Carrig very irately wrote to the Boston office of the plaintiff to the effect that the plaintiff had failed to enter as a party to the action and was therefore not entitled to any reimbursement. He made it plain that he would hold the plaintiff to the payment of the full award of compensation and that it would not be reimbursed out of the judgment obtained against Lamb.

Thereafter, on December 3rd, 1934, the plaintiff filed its application to intervene in the action of Bree, Admr. vs. Lamb and on January 2, 1935 that application was denied.

It is concluded that Mr. Carrig's letter of April 2, 1934, to the plaintiff at its New Haven office constituted the offer on behalf of Mr. Bree as administrator to enter into a contract with the plaintiff that if it refrained from entering the proposed action as a plaintiff he, the administrator, would see to it that out of any judgment rendered in his favor in that action the plaintiff would receive such reimbursement as the law would give it if it did enter as a party. This offer the plaintiff accepted by refraining from entering as a party during the time allowed by the statute. This contract was made without any reference to what compensation the plaintiff might agree to give to Mr. Carrig personally. This was an entirely separate matter. The contract between the plaintiff and Bree, Administrator, has been broken by the latter. The measure of the plaintiff's damage for that breach of contract is, of course, the amount of reimbursement that it would have recovered from Lamb under the law if it had entered as a party in the action against him, and that, it is entitled to recover from William A. Bree, as administrator.

In addition to its cause of action founded on that breach of contract the plaintiff also relies upon the broad claim that under the circumstances involved in this case the Workmen's Compensation Act itself entitles it to recover from the administrator reimbursement for compensation paid by it.

The substantial effect of the Workmen's Compensation Act.

in general and **Section 5231, General Statutes, Revision of 1930** in particular is that it is a part of every employer's agreement with his employees that he shall not be doubly compensated for any injuries which he may sustain out of and in the course of his employment. He agrees in effect that if he is injured by reason of a tort of a third party and recovers a judgment against that tort-feasor it shall be considered that the tort-feasor is the one primarily liable. It is agreed between an employer and his employee in effect that, if the injured employee recovers a judgment against the third party for a sum in excess of what the employer has paid and is by award bound to pay by way of compensation, then the employer's liability to pay any further compensation ceases and he is entitled to be reimbursed out of the amount of the judgment for the compensation paid by him up to the date of the judgment.

**Rosenbaum vs. Hartford News Co. 92 Conn., 398.**

This right of reimbursement given to the employer as a part of his agreement with his employee is a substantive right. As is said in **Rosenbaum vs. Hartford News Co., supra, at page 402:** "True the statute states only the rule for the apportionment and application of compulsory payments made by the tort-feasor after his legal liability has been ascertained by a judgment, but the rule is based on the legal relation of the parties as defined by the Act, namely, that the tort-feasor is primarily liable, and that, **as between the employee and employer,** the latter is entitled to precedence for the purpose of reimbursement or discharge".

The right being a substantive one it makes no difference that the exact method of enforcing that right prescribed by Section 5231 has not been followed. Section 5231 does provide that such reimbursement may be obtained by the employer joining in an action instituted by the employee against the tort feasor. That is one remedy which the employer has. It is not an exclusive remedy. If the employee owes the employer a contractual duty to reimburse him out of moneys he has recovered from a tort feasor, surely that obligation may be enforced in an action brought directly against the employee sounding in contract.

Accordingly, it is clear that an employer may sue a living employee for reimbursement. The obligation of an employee

to reimburse his employer for workmen's compensation paid carries over and is binding upon the administrator of the estate of the employee if that administrator recovers a judgment for damages from a third party for the death of an employee for which the employer is paying compensation.

Uva, Admx. vs. Alonzy, 116 Conn., 91.

However, it must be borne in mind that in this present case, as happens frequently, the heirs of the decedent who are the ones entitled to the amount of the judgment against the tort-feasor are a somewhat different group of persons than the dependents of the decedent who are the ones entitled to the compensation. Any amount taken from the judgment to reimburse the employer, therefore, decreases the amount going to the heirs and increases the amount going to the dependents. Care should therefore be exercised to make sure that no more should be taken from the administrator to reimburse the employer than the employer is entitled to under the agreement between the employer and employee as that agreement is established by the statute.

Section 5231 provides that "if the damages (in the action against the third party) shall be more than sufficient to reimburse him (the employer), damages shall be assessed in his favor sufficient to reimburse him for the money he has paid—and the excess shall be assessed in favor of the injured employee". This means that upon the entry of such a judgment, it having become apparent that the tort-feasor, the one primarily liable to compensate the employee for his injuries is going to take care of that compensation, the obligation of the employer, who is only secondarily liable ceases. From then on no workmen's compensation is to be paid and the employer is entitled to reimbursement of the compensation which he has paid up to that time.

Rosenbaum vs. Hartford News Co., 92 Conn., 398, 401.

Accordingly the amount of reimbursement to which the plaintiff is entitled in this case is the amount of compensation which it had paid to the decedent's dependents up to the date of the judgment in the case of Bree, Admr. vs. Lamb, to wit: October 30, 1934.

This is true if the plaintiff is allowed a recovery here on the basis that it was a part of the contract of employment

between the plaintiff and the defendants' decedent as that contract was framed by the Workmen's Compensation Act. The same result will be reached by enforcing the contract which was entered into between the plaintiff and Mr. Carrig as attorney for the defendant administrator. The measure of damages for the breach of that contract as found above is the amount of reimbursement of compensation paid, to which the plaintiff would have been entitled under the Compensation Act if it had entered the action against Lamb pursuant to the provisions of Section 5231.

Accordingly on which ever ground the plaintiff rests its case it is entitled to a judgment against William A. Bree, administrator, for damages in an amount equal to the amount it has paid pursuant to the award of compensation up to the 30th of October, 1935, plus interest thereon to the date of the judgment in this case.

The amount so paid by the plaintiff is not in evidence. Both parties obviously tried the case on the theory that if the plaintiff were entitled to anything it was entitled to the full amount which it might become obligated to pay under the award. Under the circumstances in order to do justice in the case it is concluded that the plaintiff ought to be given a further opportunity to offer evidence if it desires to do so as to the amount of compensation paid by it or due to be paid by it up to October 30, 1935. Accordingly judgment will not be entered at this time but the case may come on for the further taking of evidence in this Court on April 21, 1936 or such other time as may be set by agreement.

The special defense of res ajudicata is not well taken. The application to intervene in the action of Bree, Admr. vs. Lamb was made solely on the ground that notice of the pendency of the action had not been given to Sears, Roebuck & Company in strict accordance with the statutes. The Court denied the application on the ground that the applicant was estopped to make that claim because it had had actual notice of the pendency of the action and had elected not to cooperate. Those issues are not involved in this action. The issue here is as to whether the plaintiff has a substantive right to reimbursement. The issue in the former action was simply as to whether it should be permitted to enforce that right in that particular action.